SUNRAY MID-CONTINENT OIL COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION, Respondent (two cases).

Nos. 6043, 6061.

United States Court of Appeals Tenth Circuit.

Sept. 1, 1959.

Rehearing Denied Sept. 28, 1959.

⚷6

James C. Denton, Jr., Tulsa, Okla. (M. Darwin Kirk, Tulsa, Okl., Homer E. McEwen, Jr., and Dale E. Doty, Washington, D. C., on the brief), for petitioner.

Howard E. Wahrenbrock, Washington, D. C. (Willard W. Gatchell, Robert L. Russell, David J. Bardin and William W. Ross, Washington, D. C., of counsel, on the brief), for respondent.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

These two cases were consolidated on review upon the representation that the determination of a single question of law would be dispositive of both cases, that question being: Can the Federal Power Commission impose conditions upon the grant of a temporary certificate of public convenience and necessity? Our study indicates that although the stated question is present in each case separate consideration of the cases is necessary because of factual differences of legal significance.

No. 6043. The petitioner, an independent producer of natural gas, in conjunction with applications for permanent certificates of convenience and necessity for the sale of gas, sought temporary authorization from the Commission to initiate such sales pending determination of the applications for permanent

certificates. The temporary authority was sought pursuant to the statutory authority granted the Commission by Section 7(c) of the Natural Gas Act, 15 U.S. C.A. § 717 et seq., and in full compliance with Commission regulation 157.28.[1] Authorization to begin temporary service was initially denied by the Commission but, after protest by Sunray, was granted by letter order dated January 30, 1958. The letter of authorization contained the following statement:

> "This constitutes all requisite temporary authorization to commence the sale of gas, but such authorization and acceptance of the rate schedule are without prejudice to such final disposition of the certificate applications as the record may require and furthermore, *once service is commenced under this authorization it may not be discontinued without permission of the Commission issued pursuant to the Natural Gas Act.*" (Emphasis added.)

Sunray initiated deliveries upon receipt of the Commission letter order but informed the Commission by letter that:

"Accordingly, Sunray * * * will only 'continue such sale * * * pending final Commission action under Sections 4 and 7 of the Natural Gas Act' upon the respective applications for certificates of public convenience and necessity covering such sales. Sunray retains its right to accept or reject such certificates of public convenience and necessity as may be issued and to cease deliveries of gas in the event final action of the Commission on said applications for certificates of public convenience and necessity does not grant certificates of public convenience and necessity in accordance with the said applications."

After receipt of this letter from Sunray, the Commission rescinded its grant of temporary authority asserting that Sunray had evinced an unwillingness to comply with the Commission's lawful authority. Thereafter, ex parte, the Commission reinstated the temporary authorization, this time stating as its reason that its order of rescission had been premised upon the erroneous belief that Sunray had not initiated de-

---

1. 157.28. Temporary authorizations.
"Upon the filing of an application for a certificate of public convenience and necessity under §§ 157.23 to 157.27, there also having been filed a rate schedule under §§ 154.91 through 154.102, an independent producer, in the event of an emergency that does not involve immediate danger to life or property, may initiate the sale or transportation of natural gas in interstate commerce and continue such sale or transportation pending final Commission action under Sections 4 and 7 of the Natural Gas Act and without prejudice to such rate or other condition as may be attached to the issuance of the certificate: *Provided, however,* That this temporary authorization is applicable and available only subject to the following:
"(a) It does not apply to termination of any sale or transportation or with respect to service proposed to commence more than 30 days from the date of the filing of the statement required in paragraph (c) of this section.
"(b) It does not apply unless the purchaser of the gas or the person for whom the transportation is to be performed has been authorized to construct and operate such facilities as may be necessary to enable him to accept delivery of such gas from the independent producer.
"(c) As part of its application hereunder, or separately, the applicant independent producer must file or have on file (1) a statement of intention to invoke this section, setting forth the facts constituting the emergency requiring such action, which emergency may include, *inter alia,* drainage, threatened loss of lease, flaring, economic hardship resulting from payment of shut-in royalties, or similar situations; and (2) a statement identifying the contract tendered as the rate schedule intended to be effective for the sale or transportation under this temporary authorization.
"(d) Notice by the Secretary of the acceptance of the rate filing and the statements made under this section shall constitute a waiver by the Commission of the 30-day advance filing requirements of §§ 154.92(b) or 154.94(b), and the proposed temporary sales or transportation may proceed forthwith."

liveries so as to affect public convenience and necessity in such aspect. The reinstatement order reiterated the Commission's earlier contention that Sunray could not terminate its service except by express permission of the Commission. It is in opposition to this contention that Sunray brings the cause to this court after unsuccessfully seeking a rehearing before the Commission.

■ The right of this court to review orders of the Federal Power Commission is limited by Sec. 19(b) of the Natural Gas Act to instances where the petitioner is presently aggrieved by the imposition of such orders. This compulsion leads us to hold that the present petition is premature. The able and comprehensive presentation of counsel, pointing to the complexities of right and duty that may occur if Sunray can lawfully be required to furnish service under a temporary authorization extended beyond determination of its application for a permanent certificate (as the Commission apparently contends), or if Sunray can arbitrarily reject a permanent certificate and thereupon cease service under its temporary authorization and as a matter of right (as Sunray contends), considers but eventualities. Sunray is currently selling its gas and has made no affirmative effort to cease. The Commission has made no objection to the status quo. Regardless of Sunray's present apprehension and the Commission's present warnings it will take further administrative action to create an actual grievance. Under these circumstances, it is obvious that "the order sought to be reviewed does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action," Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 757, 83 L.Ed. 1147, and hence is not reviewable under Sec. 19(b), 15 U.S.C.A. § 717r; see Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333. If, as Sunray contends the Commission has no power to condition temporary certificates or has imposed an unlawful condition, the actions have no present impact upon Sunray. For this reason, the appeal in Case No. 6043 is dismissed.

No. 6061. Here again Sunray applied to the Commission for temporary authorization to sell gas pending final determination of its application for a permanent certificate of public convenience and necessity. By letter order dated September 17, 1958, the application for temporary authority was accepted by the Commission:

" * * * subject to the condition that the price received by Sunray for its interest in the production from the jointly owned lease here involved will be that ultimately found to be just and reasonable in the operator's rate suspension proceedings, Docket Nos. G–11710 and G–14248.[2] In addition, Sunray shall submit a statement to this Commission as to its willingness to accept a permanent certificate of public convenience and necessity, in the subject, docket on the same basis and further conditioned to require the filing of an undertaking to assure refund to the purchaser of any portion of the increased rates found by the Commission in the aforementioned suspension proceedings not justified."[3]

Petitioner applied for rehearing which was denied, two commissioners dissenting. Thereafter on January 23, 1959, the Commission, *sua sponte*, modified its order denying rehearing by substituting, for the language cited above the following:

"Such acceptance shall be subject to any conditions with respect

---

**2.** These proceedings did not involve Sunray directly but were those of an operator selling from the same field.

**3.** The letter orders also stated that once service was initiated it could not be discontinued without Commission authorization.

to price which the Commission may lawfully impose in issuing a certificate of public convenience and necessity in this Docket No. G–16134. In addition, Sunray shall submit a statement to this Commission as to its willingness to file an undertaking to assure refund of any portion of the difference, if any, between the proposed initial price of 16.4¢ per Mcf and the level of any price which the Commission may lawfully find to be required by the public convenience and necessity after hearing has been held with respect to the permanent certification of the sale of natural gas by Sunray." [4]

Sunray's second petition for rehearing was denied, one commissioner dissenting, and this petition for review followed. Sunray has not initiated service under the purported authority of the Commission order.

█ Since the acceptance order of the Commission is clearly and unequivocally conditioned in such a manner as to immediately affect Sunray if that company should initiate temporary service it is apparent that petitioner can presently question the right of the Commission to condition temporary certificates at all and, in particular, as done in the instant case. The only authority for the issuance of temporary certificates lies in the proviso of Sec. 7(c) of the Natural Gas Act:

> "Provided, however, That the Commission may issue a temporary certificate in cases of emergency, to assure maintenance of adequate service or to serve particular customers, without notice or hearing, pending the determination of an application for a certificate, and may by regulation exempt from the requirements of this section temporary acts or operations for which the issuance of a certificate will not be required in the public interest. [52 Stat. 825 (1938), as amended, 56 Stat. 83, (1942); 15 U.S.C.A. § 717f(c).]"

█ The authority so granted is to be exercised summarily and no specific provision for review is contained in the statute. It follows that such power is limited only by the general purposes of the Natural Gas Act and by constitutional restrictions.

█ The power of the Commission to impose conditions upon the issuance of permanent certificates is now well established by statute and case. Sec. 7(e), Natural Gas Act. Oklahoma Natural Gas Co. v. Federal Power Commission, 103 U.S.App.D.C. 256, 257 F.2d 634; Atlantic Refining Co. v. Public Service Commission, 360 U.S. 378, 79 S.Ct. 1246, 3 L.Ed.2d 1312. And while no specific statutory authority exists for the imposition of conditions upon temporary certificates such authority seems to us to be inherent in the power to summarily grant or reject applications for temporary service pending final determination of applications for permanent certificates. See Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943. In most instances the power to summarily reject outright is more drastic than to conditionally grant. And certain it is that temporary service of gas is such an integral part of the overall function of public service as to be indistinguishable, in practical aspect, from permanent service from the standpoint of the consumer public. We hold, therefore, that the power of the Commission to issue temporary certificates under Sec. 7(c) of the Act is not limited to the power to accept or reject the application under the terms submitted by the applicant and that the Commission may tender a conditional acceptance. This court reached a similar result in Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir., 239 F.2d 97 where a conditional application for a permanent certificate was considered. See also Sunray Mid-Continent Oil Co. v. Federal Power Comm., 10 Cir., 267 F.2d 471.

It does not follow that the broad power granted the Commission to summarily

---

4. See footnote 3.

act upon applications for temporary certificates is an absolute power. If the Commission deems it in the public interest to accept an application conditionally such conditional acceptance must be in accord with the provisions of the Act and must meet the test of constitutional due process. By filing an application with the Commission the applicant does not submit irrevocably to the jurisdiction of the Commission. Atlantic Refining Co. v. Public Service Commission, supra. It is by the initiation of public service that the applicant's property becomes dedicated to that public service and the jurisdiction of the Commission's regulatory control within the statutory limits of the Act. The Act contemplates that the Commission need not accept the conditions contained in an application, Sunray Mid-Continent Oil Co. v. Federal Power Commission, supra; it likewise contemplates that the applicant need not accept conditions imposed by the Commission in its initial acceptance. Where conditions are imposed by the Commission the applicant has the free choice to accept or reject; to dedicate his property to public service or to refuse so to do; to submit to the jurisdiction of the Commission or to remain beyond the bounds of interstate commerce. This choice cannot be exercised by the applicant if the Commission says, in effect: "Sell your gas; collect your proposed initial price; we will later tell you if you can keep your collections; if we decide you cannot, you must assure refund by bond."

In Atlantic Refining Co. v. Public Service Commission, supra, the Supreme Court recognized the right and duty of the Commission to give consideration to the reasonableness of a proposed price under Sec. 7 proceedings upon an application for a permanent certificate. The reasoning authorizing such consideration is equally applicable to the issuance of temporary certificates. Said that Court:

"Where the proposed price is not in keeping with the public interest because it is out of line or because its approval might result in a trig-gering of general price rises or an increase in the applicant's existing rates by reason of 'favored nation' clauses or otherwise, the Commission in the exercise of its discretion might attach such conditions as it believes necessary.

"This is not an encroachment upon the initial rate-making privileges allowed natural gas companies under the Act, United Gas Pipe Line Co. v. Mobile Gas Service Corp., supra [350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373], but merely the exercise of that duty imposed on the Commission to protect the public interest in determining whether the issuance of the certificate is required by the public convenience and necessity, which is the Act's standard in § 7 applications. In granting such conditional certificates, the Commission does not determine initial prices nor does it overturn those agreed upon by the parties. Rather, it so conditions the certificate that the consuming public may be protected while the justness and reasonableness of the price fixed by the parties is being determined under other sections of the Act. Section 7 procedures in such situations thus act to hold the line awaiting adjudication of a just and reasonable rate. * * *" [360 U.S. 378, 79 S.Ct. 1255.]

But in Atlantic, the applicant was tendered a certificate setting a firm initial rate with a condition allowing potential increase. In the instant case no initial rate is accepted. None is rejected. The applicant is merely asked to speculate as to what the ultimate temporary rate may be, to rely on the ultimate fairness of the final determination, and to meanwhile dedicate its gas to public service. The action of the Commission is neither an acceptance, rejection nor proper conditional acceptance of Sunray's application. It merely purports to hold in abeyance potential conditions. Under such circumstances Sunray is denied its right to have the Commission act upon

its application with such certainty as to allow the exercise of choice upon Sunray's part.

The case is remanded for further proceedings.