**SUNRAY MID-CONTINENT OIL COMPANY (formerly Sunray Oil Corporation), Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**Nos. 5279, 5280, 5380.**

United States Court of Appeals
Tenth Circuit.

Oct. 29, 1956.

Rehearing Denied Dec. 3, 1956.

James C. Denton, Jr., Tulsa, Okl. and Robert M. Scott, Washington, D. C. (M. Darwin Kirk, Tulsa, Okl., Dale E. Doty, and Doerner, Rinehart, Stuart & Clammer, Washington, D. C., on the brief), for petitioner.

Louis L. DaPra, Washington, D. C. (Willard W. Gatchell, Gen. Counsel, Federal Power Commission, and Patrick G. Sullivan, Washington, D. C., on the brief), for respondent.

Before BRATTON, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

Sunray Mid-Continent Oil Company, petitioner herein, is an independent producer of natural gas with principal place of business located in Tulsa, Oklahoma. In three separate applications filed with the Federal Power Commission petitioner sought issuance to it of certificates of convenience and necessity authorizing proposed sales of natural gas to United Gas Pipe Line Company. Jurisdiction in the Federal Power Commission is admitted and the cases are consolidated by stipulation for presentation to this court, it being agreed that common questions of fact and law are involved.

The petitions reveal that, subject to the Commission's approval, the petitioner had agreed to sell to United certain quantities of natural gas produced in the McFadden and Goliad fields in Texas and the Pistol Ridge and Maxie fields in Mississippi. Each such contract contained the following provision:

"This contract shall continue and remain in full force and effect for a primary term of ten (10) years from the date upon which deliveries of gas are commenced hereunder, and shall continue in force and effect thereafter for successive periods of one (1) year each, provided, however, that either party hereto may terminate this agreement at the end of said primary term or any succeeding annual period by giving to the other party at least ninety (90) days' prior written notice of the intention of the party giving such notice to terminate this agreement."

Petitioner alleged that it was able and willing to properly perform the proposed services and that the proposed services met the requirements of present or future public convenience and necessity and praying that findings in these regards be made according to their claims, petitioner further prayed:

"That the Commission issue to it a Certificate of Public Convenience and Necessity authorizing the sale of gas covered by the contract described hereinabove and on the cover sheet hereof to the extent, and only to the extent, that such gas is transported in interstate commerce for resale for the remainder of the term of said contract and as it may be renewed or extended, and that said certificate provide for its own expiration on the expiration of the said contract term so as to authorize Applicant to cease the delivery and sale of gas thereunder at the time."

The applications were unopposed and in accordance with the usual procedure of the Commission the petitioner neither appeared nor offered evidence in support of the petitions.

At the conclusion of the hearings the Commission found that the petitioner was able and willing to properly perform the proposed service and that the proposed service met the requirements of present or future public convenience and necessity, but in its order denied the prayer of petitioner that the certificate issued authorize the sale of gas only for

the remainder of the term of the contract. Instead, each certificate provided that it should "be effective only so long as applicant continues the acts or operations hereby authorized in accordance with the provisions of the Natural Gas Act, and the applicable rules, regulations and orders of the commission". The effect of this order was to grant petitioner certificates without limitation of time.

The Commission assigned as its reason for not limiting the life of the certificate to the life of the contract the provision of section 7(b) of the Natural Gas Act[1] as follows:

"7(b) No natural-gas company shall abandon all or any portion of its facilities subject to the jurisdiction of the Commission, or any service rendered by means of such facilities, without the permission and approval of the Commission first had and obtained, after due hearing, and a finding by the Commission that the available supply of natural gas is depleted to the extent that the continuance of service is unwarranted, or that the present or future public convenience or necessity permit such abandonment."

Aggrieved by the order of the Com-mission petitioner now seeks a review and modification of the order as far as it denies the issuance to it of a certificate which expires by its own terms at a date certain.

■ Preliminarily, the respondent Commission asserts the review is not authorized, because, it argues, petitioner is not an "aggrieved party"[2] within the meaning of the Natural Gas Act because the Commission has granted them "more" than the petitioner sought. Petitioner, of course, asserts that the granting of the certificate without limitation of time, although "more" in time, is actually less than it seeks and constitutes a restriction. Be that as it may, the granting of the certificate without limitation of time, when opposed by the applicant, is in the nature of a condition imposed upon the issuance of the certificate and as a consequence the petitioner is aggrieved.[3] See Arkansas Louisiana Gas Co. v. Federal Power Commission, 5 Cir., 113 F.2d 281.

In reviewing the order of the Commission, three basic questions are presented for consideration, each involving an interpretation of sections 7(b),[4] 7(c),[5] 7(e),[6] of the Natural Gas Act.

1. The Natural Gas Act was approved June 21, 1938, 52 Stat. 821–833, Title 15 U.S.C.A. §§ 717–717w and amended February 7, 1942, 56 Stat. 83–84, Title 15 U.S.C.A. § 717f, and July 25, 1947, 61 Stat. 459, Title 15 U.S.C.A. § 717f (h), and March 27, 1954, 68 Stat. 36, Title 15 U.S.C.A. § 717(c).

2. Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b).

3. The granting of a certificate without limitation of time is a conditional grant for the rights and obligations granted and imposed can then only be terminated by procedures held in compliance with Section 7(b). However, such a condition is imposed by the authority of the Act itself, needs neither evidence nor finding to support its imposition by the Commission, and unless opposed by the applicant gives rise to no reviewable grievance.

4. U.S.C.A. § 717f(b). Set forth ante.

5. Section 7(c), 15 U.S.C.A. § 717f(c) requires those desiring to engage in such transportation or sale, or to construct, extend, acquire, or operate any facility thereunder, to apply to the commission for a certificate of public convenience and necessity.

6. Section 7(e), 15 U.S.C.A. § 717f(e) governs the issuance of certificates. It provides: "a certificate shall be issued to any qualified applicant therefor, * * if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed and to conform to the provisions of the Act and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, sale, operation, construction, extension, or acquisition * * * is or will be required by the present or future public convenience and necessity * * *. The Commission shall have the power to attach to the issuance of the certificate and to the

These are:

1. Do Sections 7(c) and 7(e) Empower the Commission to Issue Certificates of Limited Duration?

Petitioner contends this must be answered in the affirmative; the Commission asserts it should be answered in the negative.

2. If a Certificate of Limited Duration is Sought, Must the Commission Issue it if it Finds: (a) That the Petitioner is Able and Willing to Perform the Proposed Services and (b) That the Proposed Services Meet the Present or Future Public Convenience and Necessity?

Petitioner would answer this in the affirmative; the Commission in the negative.

3. Is Section 7(b) a Limitation Upon the Powers or Obligations of the Commission Granted Under Sections 7(c) and 7(e)?

Petitioner here argues for the negative and the Commission disagrees.

■■■ *May the Commission grant certificates of limited duration?*

It will be noted that the concluding sentence of section 7(e) of the Act specifically states that "the Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require".

This is a specific grant of power to the Federal Power Commission by the Congress to examine and determine the requirements of public need in the matter of natural gas flowing in interstate commerce and to meet the public requirements by the exercise of wide discretion in the determination of reasonable controls of natural gas companies coming within the jurisdiction of the Commission. The statute should be liberally construed to accomplish this purpose and

the determination of the Commission as to when to impose and what constitutes a reasonable term or condition should not be upset by this court unless a clear abuse of discretion appears. Federal Power Commission v. Pacific Power & Light Co., 307 U.S. 156, 59 S.Ct. 766, 83 L.Ed. 1180.

In the instant case petitioner sought to have its certificate expire by lapse of time at a date certain, alleging as its only ground existence of its contract with United. The existence of such a contract cannot serve as a restriction on the Commission's powers. Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943. Petitioner's application to the Commission shows no other reasons and no evidence was offered as to why a condition should be imposed upon the certificates in the manner sought or at all.

We conclude, therefore, that in a proper case [7] the Commission may grant certificates of convenience and necessity for periods of limited duration. In some cases, legal, physical, financial or other factors may be shown to exist which warrant conditioning certificates as to time. Petitioner here has made no such showing nor does it claim the ability to so show.

■■■ *Must the Commission issue certificates of limited duration when ability to perform and necessity of service is found?*

Under the clear terms of the Natural Gas Act this must be answered in the negative. In order to contend otherwise the petitioner must necessarily argue that the Commission is bound by the limitations contained in applications and can grant certificates only in conformity with the petitions. If this interpretation of Section 7(e) were correct the purpose of the Natural Gas Act would be defeated as the applicants could practically dictate the terms and conditions of each

exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require."

7. Although in its presentation to this court the Commission denies its power to issue a certificate limited in time, a review of its previous orders shows that it has many times done so for varying reasons.

certificate issued by the Commission. Applicants have no such rights. A natural gas company, once having entered a field of business affected with a public interest, must submit to those regulations which Congress deems necessary to protect the public. As stated by this court in Colorado Interstate Gas Co. v. Federal Power Commission, supra, the primary purpose of the Natural Gas Act is to provide comprehensive regulation of wholesale distribution to public service companies of natural gas moving interstate, and to authorize the Federal Power Commission to exercise such regulations. If the Commission is to have the power to protect the public against the exploitation of natural resources within the scope of the Act at the hands of natural gas companies, as indicated by the United States Supreme Court in Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333, it can only do so by controlling not only the initiation of transportation in interstate commerce but also controlling the cessation of such service. No single factor in the Commission's duty to protect the public can be more important to the public than the continuity of service furnished. Congress has entrusted to the Commission the means and responsibility of achieving the statutory policy of providing for the protection of the ultimate consumers of natural gas and has given it broad powers to order a natural gas company to extend its facilities, to establish physical connections, and to sell to persons engaged in distribution to the public. 15 U.S.C.A. § 717f(a); Illinois Natural Gas Co. v. Central Illinois Public Service Co., 314 U.S. 498, 62 S.Ct. 384, 86 L.Ed. 371. Each of these powers is directly concerned, among other things, with providing the public adequate, reasonable, and continuous service. Each one of these powers would be a useless one if the natural gas companies could set, at the initiation of their public service, the date at which they would withdraw, abandon or cease their service.

Just as the Commission has authority to impose conditions upon the issuance of a certificate so, too, it has authority to refuse to impose conditions. The burden is upon the applicant to show the reasonableness of its request for a conditional certificate.

■ *Does section 7(b) limit the powers of the Commission granted under sections 7(c) and 7(e)?*

These three sections must be read together as constituent parts of the Act. In so doing it is apparent that section 7(b) is a clear recognition by Congress of the necessity of granting power to the Commission to control the cessation of service of natural gas companies in order to assure continuity of service to the consuming public.

Speaking generally the Commission is empowered and required to perform three functions: (a) determine when to grant certificates of convenience and necessity; (b) regulate the service performed under certificates issued; (c) determine when cessation of the service is proper. Section 7(b) is the statutory authority for the latter requirement. Other sections of the Act govern the other functions of the Commission. But to effectively carry out the purposes of the Act and to establish and maintain the appropriate balance of public interest in supply, service and consumption of natural gas, the several functions of the Commission are to be viewed only as a means to an end. So, too, are the several sections of the Act upon which statutory authority rests. Section 7(b) is clearly not intended to be a restriction upon the powers granted in Sections 7(c) and 7(e).

■ It being well established that a judgment correct in ultimate effect will not be disturbed on review although the authority below relied upon erroneous reasoning,[8] the orders of the Federal Power Commission are accordingly affirmed and the petitions for review severally dismissed.

---

8. Utah Copper Co. v. Railroad Retirement Board, 10 Cir., 129 F.2d 358, certiorari denied 317 U.S. 687, 63 S.Ct. 258, 87 L.Ed. 551; Jay v. Chicago Bridge & Iron Co., 10 Cir., 150 F.2d 247.